```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
OUMA MAHAMADOU,

                              Plaintiff,           15-cv-7439 (PKC)

             -against-                             MEMORANDUM
                                                   AND ORDER

1199 SEIU UNITED HEALTHCARE
WORKERS EAST, ISABELLA VISITING
CARE, INC., and PARTNERS IN CARE,

                              Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

Plaintiff Ouma Mahamadou, proceeding pro se, commenced this action on September 18, 2015. (Dkt. No. 2.) Mahamadou alleges in her complaint (the "Complaint") that her employers Isabella Visiting Care, Inc. ("Isabella") and Partners in Care ("Partners") violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12112-12117 ("ADA"), and the New York State Human Rights Law, N.Y. Exec. Law. §§ 290-297 ("NYSHRL"). (Compl. at 1.) In addition, while Mahamadou did not check the box of her form Complaint to indicate that her employers violated Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-20002-17, she does indicate elsewhere in the Complaint that her employers discriminated against her on the basis of race, color, and national origin. (Compl. at 3.) Mahamadou's description of the underlying events is as follows:

> I ask[ed] for an accommodation[;] my employer didn't approve it[.]
> I also didn't get any representation from my union rep (this is my
> 3rd time I am being terminated from my job.)

(Id.) Mahamadou also brings these claims against 1199 SEIU United Healthcare Workers East ("1199"), a union of which she was a member until her termination in February 2015.

Prior to commencing this action, Mahamadou filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 2, 2015. (Bauer Decl. Ex. A. ("EEOC Charge"), Dkt. No. 25.)[1] In her Charge, she indicated that she was discriminated against based on race, sex, religion, and national origin, and that her employer retaliated against her by terminating her employment. (Id.) Describing the particulars of her discrimination, Mahamadou stated:

> I am black female of Nigerian descent. I worked for the above employers from March 5, 2010 to February 2015 when I discovered I was terminated. I was also a member of union 1199SEIU during that period. However, I was discriminated against on the basis of my race, national origin and religion, being [M]uslim, during my employment and termination pursuant to the agreement in our union contract. I was not given any jobs to work on, while others who are not black, from Niger or [M]uslim, were given opportunities to work. I was told not to even bother to go to the union for help. When I complained that no grievance was filed they simply retaliated and told me it was too late and I would have to work elsewhere.

(Id.) After reviewing Mahamadou's claims, on July 31, 2015, the EEOC dismissed the charges and issued a Notice of Right to Sue Letter. (Compl. at 5-11.) Mahamadou subsequently commenced this action against Isabella, Partners, and 1199.

Isabella, Partners, and 1199 each filed a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P. on February 3, February 5, and April 6, 2016, respectively. (Dkt. No. 23, 27, 39.) Each motion was served upon Mahamadou at her last known address. (Dkt. No. 26, 30, 42.) Pursuant to an Order of this Court, Mahamadou's opposition papers were due no later

---

[1] Mahamadou's EEOC Charge was not attached to her Complaint. While a court will not typically rely on documents outside the pleadings when deciding a motion to dismiss, a court may consider documents that a plaintiff relied upon in drafting his or her complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Here, the Court may rely on Mahamadou's EEOC Charge in deciding the motion to dismiss, because she incorporated the Charge by referring to it in Complaint.

than May 6, 2016. (Dkt. No. 38.) Mahamadou submitted no papers in opposition and has made no request for an extension. The Court therefore considers the motion unopposed.

LEGAL STANDARD

An unopposed Rule 12(b)(6) motion is subject to review on the merits. McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir. 2000). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a complaint, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)). At the same time, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations omitted). Courts continue to afford special solicitude for pro se complaints after Iqbal and Twombly. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

Drawing every reasonable inference in favor of the Mahamadou and mindful of the special solicitude afforded to a pro se litigant, defendants' motions to dismiss must nevertheless be granted.

TIMELINESS OF ACTION

As an initial matter, defendants contend that Mahamadou's discrimination claims are untimely, because she waited more than 300 days from the date of the alleged discrimination

before filing her EEOC charge. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78-79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred.") (internal quotations omitted). Mahamadou's pro se Complaint is unclear as to when the alleged discrimination occurred. Her handwritten allegation can potentially be read as either September 2013 or September 2015. (Compl. at 3.) However, neither date makes much sense based on the remainder of Mahamadou's Complaint and EEOC Charge. September 2015 is after the date Mahamadou purportedly signed the Complaint, and September 2013 predates her termination by more than a year. (EEOC Charge at 2.)

Construing Mahamadou's Complaint liberally, the Court cannot conclude that her discrimination claims are untimely. Mahamadou's contention that the discriminatory actions underlying her claims occurred in September 2013 or 2015 was only her "best recollection." Furthermore, her EEOC Charge, which was filed in April 2015,[2] alleges that she was not terminated until February 2015. Therefore, for purposes of deciding this motion, the Court construes Mahamadou's pleadings as alleging discrimination on some date in February 2015, the last date of her employment. Accordingly, her discrimination claims are timely.

The filing of an EEOC charge, however, does not toll the statute of limitations for related claims. Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 461 (1975) (holding that the filing of an EEOC charge for Title VII discrimination claims did not toll the statute of limitations for a related claim under 42 U.S.C. § 1981). One such related claim that the Complaint can be construed as raising is a claim against 1199 for a breach of its duty of fair representation.

---

[2] Although Mahamadou contends that she filed her EEOC Charge in September 2013, the EEOC Charge itself, provided by Partners, unequivocally shows that she filed the charge on April 4, 2015. (EEOC Charge at 1.)

Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015) ("The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)).  Such a claim has a six-month statute of limitations period.  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169-72 (1983).  Because Mahamadou contends that her union membership was coterminous with her employment (EEOC Charge at 2), the very latest date upon which 1199 could have breached its duty was the last day of her employment.  Generously construing Mahamadou's last date of employment as the last day of February 2015, to have a timely claim, Mahamadou would need to have brought this action by the end of August 2015.

While Mahamadou seemingly signed the Complaint on August 18, 2015, it was not received and filed by the Clerk's Office until September 18, 2015.  Under Rule 3, Fed. R. Civ. P., "[a] civil action is commenced by filing a complaint with the court."  The Second Circuit has interpreted Rule 3 to mean that an action is commenced on the date the Clerk's Office receives a plaintiff's filing papers.  Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 78 (2d Cir. 2003), as amended (July 29, 2003) (holding that the complaint fell outside the 90-day statute of limitations period, where plaintiff mailed the complaint to the Clerk's Office 89 days after the clock began to run, but the Clerk's Office did not receive it until 92 days after the time began to run); United States v. White, 980 F.2d 836, 845 (2d Cir. 1992) (observing that "filing requires delivery of papers into the actual custody of the clerk") (internal quotations omitted).  Therefore, even if Mahamadou signed the Complaint in August 2015, the action did not commence until September 18, 2015, the date on which the Clerk's Office received the

Complaint.  Accordingly, Mahamadou's claim for 1199's breach of the duty of fair representation is untimely.

ADA AND ADEA CLAIMS

Mahamadou's age and disability discrimination and retaliation claims must be dismissed for her failure to exhaust administrative remedies.  Mahamadou raises discrimination and retaliation claims under the ADEA and the ADA for the first time in her Complaint, thereby barring those claims.  McPherson v. New York City Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006) ("Under . . . the ADEA, a plaintiff can sue in federal court only after filing timely charges with the EEOC."); Spruill v. NYC Health & Hosp., No. 06 cv 11362, 2007 WL 2456960 (WHP), at *2 (S.D.N.Y. Aug. 23, 2007) ("A plaintiff must exhaust his administrative remedies with the EEOC or an authorized agency before filing Title VII, ADA or ADEA claims in federal court."), aff'd sub nom. Spruill v. New York City Health & Hosps. Corp., 367 F. App'x 269 (2d Cir. 2010).

However, because "administrative exhaustion is not a jurisdictional requirement; rather, it is merely a precondition of suit," courts have found that a plaintiff's failure to exhaust is subject to equitable defenses.  Fowlkes, 790 F.3d at 384.  But here, Mahamadou has failed to assert any defenses for her failure to exhaust.  Unexhausted claims may be considered in a subsequent federal action, for example, where they are "reasonably related to those [claims] that were filed with the agency."  Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 177 (2d Cir. 2005) (quoting Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)).  "Reasonably related conduct is that which 'would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'"  Id. (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)).  Here, Mahamadou only contends that she was discriminated against based on her race, national origin, and religion in her

EEOC Charge, and makes no reference to either her age or disability. Therefore, Mahamadou's ADA and ADEA claims cannot be said to be reasonably related to the allegations underlying her original discrimination claims. DiProjetto v. Morris Protective Serv., 306 F. App'x 687, 688 (2d Cir. 2009) (holding that claims of race, gender, and disability discrimination were not reasonably related to allegations of national origin discrimination raised in EEOC Charge). Absent any other equitable defenses, Mahamadou's ADEA and ADA claims must be dismissed.

TITLE VII DISCRIMINATION CLAIMS

Mahamadou's remaining claims for discrimination based on race, national origin and religion pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-20002-17 must also be dismissed for failure to state a claim. "[T]o defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 87.

Mahamadou's termination is the only adverse employment action that she plausibly alleges her employer took against her.[3] However, other than checking boxes to indicate that defendants discriminated against her on the basis of race, national origin, and religion, Mahamadou's Complaint contains no factual allegations to support her contention that her termination was a result of racial, national original, or religious discrimination. Mahamadou's two-sentence recitation of facts in her Complaint relate entirely to her request for an accommodation, and 1199's failure to adequately represent her.

---

[3] While Mahamadou checked boxes on her form Complaint to indicate that she was subjected to several other adverse employment actions, such as failure to hire and failure to promote, the Complaint sets forth no facts to "show" that the "pleader is entitled to relief" on these claims. Rule 8(a), Fed. R. Civ. P.

Nor does Mahamadou allege facts in her EEOC charge sufficient to support her claim of discrimination on the basis of race, national origin, or religion. Mahamadou contends that she was "discriminated against on the basis of my race, national origin and religion." (EEOC Charge at 2.) However, this allegation is conclusory, and Mahamadou does not provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). "While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.'" Vega, 801 F.3d at 86 (quoting Twombly, 550 U.S. at 555). Mahamadou's only other allegation relevant to her discrimination claims states that "others who are not black, from Niger or [M]uslim were given opportunities to work." This too, however, "fails to describe who these people are, what their responsibilities were, how their workplace conduct compared to [Mahamadou's], or how they were treated." Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014). "'[A] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" Johnson v. Andy Frain Servs., Inc., __ Fed. App'x __, 2016 WL 210098, at *2 (2d Cir. Jan. 19, 2016) (quoting Mandell v. Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)). While detailed factual allegations are not required at this stage, Mahamadou fails to include any allegations to determine whether other individuals to whom she refers were similarly situated. Based on the minimal facts alleged, the Court cannot conclude that Mahamadou "allege[d] enough to 'nudge[ ] their claims across the line from conceivable to plausible.'" Vega, 801 F.3d at 87 (quoting Twombly, 550 U.S. at 570). Mahamadou's Title VII discrimination claims are therefore dismissed.

TITLE VII RETALIATION CLAIMS

Similarly, Mahamadou's claim for retaliation must also be dismissed. "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." Vega, 801 F.3d at 90.

The Complaint contains no factual assertions to support Mahamadou's retaliation claim. Her single allegation in support of her claim of retaliation can be found in her EEOC Charge, which states that "[w]hen I complained that no grievance was filed they simply retaliated and told me it was too late and I would have to work elsewhere." (EEOC Charge at 2.) Mahamadou's allegation does not indicate to whom she complained or what she complained about. Furthermore, her assertion that "they simply retaliated" is conclusory, and it is unclear from the context which defendant retaliated and what that defendant did to retaliate. Mahamadou fails to sufficiently allege the adverse employment action, the protected activity in which she engaged, or the causal connection between the two. Vega, 801 F.3d at 90 ("As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity.").

STATE LAW CLAIM

Mahamadou's only remaining claims arise under New York law. A court has the discretion to exercise supplemental jurisdiction over state law claims when there is no longer a basis for federal jurisdiction. See 28 U.S.C. § 1367(c). In light of the factors enumerated in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988), the Court declines to exercise supplemental jurisdiction over Mahamadou's remaining state law claim.

CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (Dkt. No. 23, 27, 39.) are GRANTED. The Clerk of the Court is directed to enter judgment for defendants and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 24, 2016